**EXHIBIT 2**



**UNITED CASUALTY AND SURETY INSURANCE COMPANY**
**US CASUALTY AND SURETY INSURANCE COMPANY**
**UNITED SURETY INSURANCE COMPANY**
333 Newbury Street, 3rd Floor
Boston, MA 02115

### GENERAL INDEMNITY AGREEMENT

The undersigned Principal and Indemnitors represent, warrant and verify that the statements and information contained in the attached application are true and correct, and agree as follows effective as of the date any of them first signed this Agreement:

1. DEFINITIONS.  The following definitions apply: BOND: Any surety bond, undertaking or similar instrument or agreement, and any extension, modification or renewal thereof, issued by Surety, whether as surety or co-surety, and whether issued on, before or after the date of this Agreement, for the benefit of or at the request of Principal or any of the Indemnitors. PRINCIPAL: The person(s) or entity(ies) named in the within application as "Principal," together with any other person or entity named or referred to in any Bond as "principal."  INDEMNITORS: The person(s) or entity(ies) who execute or adopt this Agreement as Indemnitors, at any time, all of whom acknowledge that they have a material and beneficial interest in the Principal's receipt of any Bond issued by Surety. UNDERSIGNED: Principal and all Indemnitors, jointly and severally.  SURETY: UNITED CASUALTY AND SURETY INSURANCE COMPANY, US CASUALTY AND SURETY INSURANCE COMPANY and UNITED SURETY INSURANCE COMPANY, their present or future subsidiaries, successors or affiliates, their reinsurers or any other person(s) or entity(ies) which any of them may procure to act as a surety or as a co-surety on any Bond. CONTRACT: Any agreement entered into by Principal, including but not limited to any agreement that is the subject of any Bond.     EXPENSES:  All expenses of whatever kind or nature paid or incurred by Surety, including but not limited to attorneys' fees and/or costs and disbursements, whether of outside or in-house counsel, fees of accounting, engineering or other consultants or experts, and all costs of claim investigation and/or claim adjustment.

2. CREDIT INFORMATION.  The Undersigned authorize Surety to conduct background and credit inquiries and checks about each of them from time to time, as Surety may deem appropriate, from all available lawful sources including but not limited to credit reporting agencies and other third parties.

3. INDEMNITY.  Principal and Indemnitors, jointly and severally, shall indemnify and hold Surety harmless from and against any and all claims, demands, liabilities, losses, costs, damages, and Expenses that Surety may pay or incur by reason of or as a result of Surety's execution of any Bond, including but not limited to all such loss, cost and Expenses relating to: (a) any claim, demand, suit, action, proceeding or judgment arising under, involving or relating to any Bond, whether or not Surety shall make or shall have made any payment in respect thereof; or (b) any action or proceeding to enforce any of the terms of this Agreement or to obtain recovery from any person of any loss, cost or Expenses incurred by Surety, or any unpaid premiums in respect of any Bond.  A statement of Surety's losses, cost and Expenses sworn to by an officer of Surety, or the other evidence of disbursement by Surety maintained in the ordinary course of business as Surety's paper or electronic business records and/or systems, shall be prima facie evidence of the fact and extent of the liability of the Undersigned.

4. COLLATERAL SECURITY.  Within seventy-two (72) hours of Surety's written demand, the Undersigned shall deposit with Surety cash in the amount Surety determines, in its sole discretion and from time to time, will fully protect Surety from all potential loss, cost or Expenses in respect of any claim, demand, notice, suit or other potential or anticipated liability under any Bond, to be held and applied by Surety as collateral until Surety has received (a) evidence satisfactory to Surety of Surety's complete discharge of all potential liability, and (b) reimbursement for all amounts due to Surety under this Agreement.

5. DEFAULT.  Principal shall be deemed to be in Default under this Agreement if: (a) Principal breaches, abandons or repudiates any Contract; (b) Any obligee of any Bond declares Principal to be in default of any bonded Contract; (c) Principal fails to pay in full for any labor or materials in connection with any Contract when such payment is due; (d) Principal or any Indemnitor breaches any provision of this Agreement; (e) Principal or any Indemnitor becomes the subject of any agreement or proceedings of composition, insolvency, bankruptcy, receivership, trusteeship, or assignment of creditors; (f) Principal or any Indemnitor becomes insolvent under any test for insolvency recognized by any state or federal court or statute; or (g) Principal (if an individual), or the owner of more than 30% of the ownership interests in Principal (if an entity) dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with reasonable methods.  Upon a Default, Surety may at its option and sole discretion: (i) Take over any Contract that is the subject of any Bond and arrange for its completion; (ii) Take possession of Principal's equipment, materials and supplies at the site of the work of any Contract or elsewhere, and utilize the same for completion of any Contract that is the subject of any Bond; (iii) Take possession of the office equipment, books and records of Principal as are necessary for completion of any Contract that is the subject of any Bond; (d) Enforce all assignment rights provided for in Section 6 hereof.

6. ASSIGNMENT.  As security for their obligations under this Agreement, the Undersigned hereby assign, transfer, pledge and convey to Surety (effective as of the date of issuance of any Bond, but only in the event of Default referred to in Section 5 above) all of their rights in the following: (a) All subcontracts let in connection therewith and surety bonds or guarantees issued on behalf of such subcontractors; (b) All machinery, plant equipment, or tools which shall be upon the site or sites of the work or elsewhere for the purpose of any Contract, including all material ordered for any Contract; (c) Any and all sums due or which may at any time become due under any Contract; (d) All rights arising out of all insurance policies, notes, accounts receivable and general intangibles. This Agreement constitutes a Security Agreement, and Surety may at any time, and without prior notice, file or record one or more financing statements or other documents pursuant to the Uniform Commercial Code or other applicable statute to record or perfect the security interests granted to Surety.

7. CLAIMS.  Surety has the exclusive right to determine whether any claim, suit, demand, liability or judgment made or commenced against Surety on any Bond shall be paid, settled, compromised, resisted, defended, tried or appealed, and such determination shall be binding upon the Undersigned.

8. ACCESS TO BOOKS, RECORDS AND OTHER INFORMATION.  Surety shall have right to freely examine and copy the books, records and accounts of Principal and Indemnitors, their periodic financial statements, bank and other financial holdings records, and federal and state tax returns; to communicate with third parties involved in the bonded work being performed by Principal; and to inspect, observe, photograph or otherwise record any work that is the subject of any Bond, whether on or off the jobsite.

9. POWER OF ATTORNEY.  Principal and Indemnitors hereby irrevocably nominate, constitute and appoint Surety as their Attorney-in-Fact, with the power, but not the obligation, to exercise all of the rights granted, assigned, transferred and set over to Surety by Principal and Indemnitors in this Agreement, and to make, execute and deliver such other and further documents or instruments that Surety deems reasonably necessary to give full effect to the intent and purposes of this Agreement and to secure and/or enforce Surety's rights hereunder.

10. TRUST FUNDS.  Principal holds the proceeds of each Contract that is the subject of any Bond as trustee for the benefit of Surety, as beneficiary, and the permissible uses of such trust proceeds by Principal extend solely to the payment of amounts due for labor and materials provided to Principal by others in the

Page 1 of 2

prosecution of such Contract, and the discharge of the obligations of Principal that are the subject of such Bond until all liability of Surety under any Bond related to such Contract shall have been extinguished.

11. WAIVER OF NOTICE.  Surety need not provide to any of the Undersigned notice of any act, fact, occurrence, event or information concerning or affecting Surety's rights or liabilities under any Bond, or the rights or liabilities of any of the Undersigned under this Agreement.

12. TERMINATION.  An Indemnitor's liability under this Agreement may be terminated by written notice sent by certified mail to Surety at its executive offices: 333 Newbury Street, 3rd Floor, Boston, MA 02115.  Such termination shall not be effective until thirty (30) days following Surety's receipt of such notice, and shall not affect the liability of any other of the Undersigned under this Agreement, or the liability of the terminating Indemnitor relating to any Bond issued or authorized prior to the effective date of such termination, or any Bond executed pursuant to a bid or proposal bond executed or authorized prior to the effective date of such termination.

13. GENERAL PROVISIONS:

A. Surety may decline the issuance of any Bond, or its continuance or renewal, or may cancel any Bond, in its sole discretion.

B. Surety may bring separate suits under this Agreement against any Principal and/or Indemnitor as causes of action may accrue hereunder, and in any sequence or order.  Surety's delay or refraining from seeking enforcement of any right or claim at any time shall not be deemed a waiver or any such right or claim, or a waiver of any other right or claim.

C. No change or modification of this Agreement shall be effective unless expressly agreed to in a writing signed by an officer or other authorized representative of Surety.

D. This Agreement constitutes the entire agreement among the Undersigned and Surety regarding the subject matter of this Agreement, and supersedes any prior agreement among the parties respecting that subject matter.

E. Titles and subtitles included in any section of this Agreement are for ease of reference only, and shall not be deemed to affect or restrict the meaning or interpretation of any provision of this Agreement.

F. An electronic copy of this Agreement, by whatever means produced, shall be considered an original and shall be admissible in any court of law or other proceeding to the same extent as an original.

G. If any provision of this Agreement shall be found to be void or unenforceable, then all other provisions of this Agreement shall continue to be fully enforceable.

H. The failure of any named or anticipated Indemnitor to execute this Agreement shall not give rise to any defense by any Principal or Indemnitor executing this Agreement, all of whom shall be fully bound by this Agreement.

I. The rights granted to Surety under this Agreement are in addition to, and are not in substitution or in lieu of, any other rights of Surety under any other agreement or under any applicable statutory, regulatory or common law.

J. Signatures to this Agreement that are affixed and/or transmitted by electronic, facsimile, email or similar means are intended to be fully binding as original signatures to formalize this Agreement with the intent that the Surety will rely upon them.  Each signatory shall provide Surety with all additional verification information that may be requested either prior to, at the time of or after the making and/or transmission of each signature.

THE UNDERSIGNED REPRESENT THAT THEY HAVE CAREFULLY READ THIS ENTIRE GENERAL INDEMNITY AGREEMENT AND HAVE BEEN PROVIDED WITH THE OPPORTUNITY TO REVIEW IT WITH INDEPENDENT COUNSEL OF THEIR CHOICE, AND THAT THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, EITHER WRITTEN OR ORAL, UPON WHICH THEY RELIED IN ENTERING INTO THIS AGREEMENT. EACH SIGNATORY TO THIS AGREEMENT REPRESENTS AND WARRANTS THAT HE, SHE OR IT HAS THE FULL AUTHORITY, POWER AND CAPACITY TO EXECUTE AND DELIVER THIS AGREEMENT AND TO FULLY PERFORM ALL OF ITS TERMS.

IN WITNESS WHEREOF, THE UNDERSIGNED HAVE SIGNED THIS GENERAL INDEMNITY AGREEMENT AS OF __July 22nd__ , __2021__

| | |
|---|---|
| _(signature)_ (President) | _(signature)_ (Managing Partner |
| (Principal Indemnitor Signature) | (Principal Indemnitor Signature) |
| Print or Type Entity Name: | Print or Type Entity Name: |
| Omimex Petroleum, Inc. | Ravenwood Energy Partners, LP |
| Tax ID: 85-0918223 | Tax ID: 84-2036434 |
| _Dennis McLaughlin_ | _(signature)_ |
| (Indemnitor Signature) | (Indemnitor Signature) |
| Print or Type Name: | Print or Name: |
| Dennis McLaughlin | Christopher Chambers |
| SSN: ▮▮▮▮ | SSN: ▮▮▮▮ |
| _Angela McLaughlin_ | _Rhonda S Chambers_ |
| (Indemnitor Signature) | (Indemnitor Signature) |
| Print or Type Name: | Print or Type Name: |
| Angela McLaughlin | Rhonda Chambers |
| SSN: ▮▮▮▮ | SSN: ▮▮▮▮ |

Page 2 of 2