EXHIBIT 1



**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.

UNITED CASUALTY & SURETY INSURANCE COMPANY,

Plaintiff,

v.

RAVENWOOD ENERGY PARTNERS, LP,
DENNIS MCLAUGHLIN,
ANGELA MCLAUGHLIN,
CHRISTOPHER CHAMBERS, and
RHONDA CHAMBERS

Defendants.

---

# COMPLAINT

---

Plaintiff, United Casualty & Surety Insurance Company ("Plaintiff," "UCS," or "Surety"), through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, submits its Complaint against Defendants Ravenwood Energy Partners, LP ("Ravenwood"), Dennis McLaughlin ("Mr. McLaughlin"), Angela McLaughlin ("Ms. McLaughlin"), Christopher Chambers ("Mr. Chambers"), and Rhonda Chambers ("Ms. Chambers") (Ravenwood, Mr. McLaughlin, Ms. McLaughlin, Mr. Chambers, and Ms. Chambers are collectively referred to as the "Indemnitors" or "Defendants"), and states as follows:

## I. PARTIES

1. UCS is a Massachusetts corporation authorized to conduct business in Colorado.

2. Upon information and belief, Ravenwood is a Texas corporation with its principal offices located at 2101 Cedar Springs Road, Suite 100, Dallas, Texas 75201, and thus is considered a citizen of Texas for jurisdictional purposes. *See Sain v. EOG Resources, Inc.,* 204 Fed. Appx. 739, 743 (10th Cir. 2006) ("For diversity purposes, a corporation is deemed to be a citizen of […] the State where it has its principal place of business.").

3. Upon information and belief, Mr. McLaughlin is citizen of Texas, whose last known residence is 3508 Lexington Avenue, Dallas, Texas 75205.

4. Upon information and belief, Ms. McLaughlin is a citizen of Mississippi, whose last known residence is 549 Wright Road, Clarksdale, Mississippi 38614.

5. Upon information and belief, Mr. Chambers is a citizen of Texas, whose last known residence is 2727 Daniel Avenue, Dallas, Texas 75205.

6. Upon information and belief, Ms. Chambers is a citizen of Oklahoma, whose last known residence is 2523 Meadow Brook Drive, Norman, Oklahoma 73072.

## II. JURISDICTION AND VENUE

7. UCS incorporates by reference all the allegations contained above as though set forth herein.

8. This Court has personal jurisdiction over the matters and controversies described herein because the events, acts, and/or omissions giving rise to this dispute occurred in Colorado.

9. This Court has original subject matter jurisdiction over UCS's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of UCS's claims against Defendants exceed $75,000 (UCS seeks collateral in the amount of no less than $230,000 and reimbursement of all losses) and UCS is a citizen of a different state than each of Defendants.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events, acts, and/or omissions giving rise to the UCS's claim occurred in Colorado.

## III. GENERAL ALLEGATIONS

11. UCS hereby incorporates by reference all the allegations contained above as though set forth herein.

### A. The Bonds

12. On or about July 22, 2021, and September 8, 2021, UCS, as Surety, executed four performance bonds (the "Bonds") on behalf of Omimex Petroleum, Inc. ("Omimex") with a combined penal sum of $205,000.00.[1] Copies of the Bonds are attached hereto as **Exhibit 1** and incorporated by reference herein.

13. UCS executed the following Bonds on behalf of Omimex, as principal, and in favor of the State of Colorado, as Obligee, in relation to Omimex's oil and gas leases in Colorado:

| Bond No. | Approved/Executed | Type of Bond | Penal Sum |
|---|---|---|---|
| UCSX423X 1393 | 07/22/2021 | Surface – Rule 703 | $ 25,000.00 |
| UCSX423X 1423 | 09/08/2021 | Plugging – Rule 706 | $ 100,000.00 |
| UCSX423X 1392 | 09/08/2021 | Gas Facilities – Rule 711 | $ 50,000.00 |
| UCSX423X 1455 | 09/08/2021 | Plugging – Rule 706 | $ 30,000.00 |

14. Oil and gas leases in Colorado are regulated by the Colorado Energy & Carbon Management Commission ("ECMC").

15. UCS has incurred losses and liabilities as a result of executing the Bonds on behalf of Omimex and the Defendants, who have or had an interest in Omimex.

[1] On December 10, 2024, Omimex filed a petition under Chapter 11 of the U.S. Bankruptcy Code in the Northern District of Texas (Case No. 24-340018-SWE). Pursuant to the automatic stay imposed by U.S.C. Section 362, UCS is not pursuing Omimex at this time. UCS reserves the right to later pursue Omimex should its Chapter 11 petition be dismissed.

16. As set forth in the Bonds, UCS agreed to guarantee Omimex's obligations owed to Colorado in relation to Omimex's oil and gas leases. To the extent that Omimex defaulted on its bonded obligations owed to the State of Colorado, UCS was obligated to perform Omimex's bonded obligations, as required under the Bonds and by prevailing law.

**B. The Indemnity Agreement**

17. At all times relevant herein, Defendants owned and/or otherwise controlled Omimex and its operations.

18. As consideration for UCS executing the Bonds and other consideration, on or about July 22, 2021, Defendants executed a General Indemnity Agreement (the "GIA") in favor of UCS. A copy of the GIA is attached hereto as **Exhibit 2** and incorporated by reference.

19. The GIA provides, in pertinent part:

> Principal and Indemnitors, jointly and severally, shall indemnify and hold Surety harmless from and against any and all claims, demands, liabilities, losses, costs, damages, and Expenses that Surety may pay or incur by reason of or as a result of Surety's execution of any Bond, including but not limited to all such loss, cost and Expenses relating to: (a) any claim, demand, suit, action, proceeding or judgment arising under, involving or relating to any Bond, whether or not Surety shall make or shall have made any payment in respect thereof; or (b) any action or proceeding to enforce any of the terms of this Agreement or to obtain recovery from any person of any loss, cost or Expenses incurred by Surety, or any unpaid premiums in respect of any Bond. A statement of Surety's losses, cost and Expenses sworn to by an officer of Surety, or the other evidence of disbursement by Surety maintained in the ordinary course of business as Surety's paper or electronic business records and/or systems, shall be prima facie evidence of the fact and extent of the liability of the Undersigned.

*See* **Ex. 2**, ¶ 2.

20. The GIA further provides that:

> Surety has the exclusive right to determine whether any claim, suit, demand, liability or judgment made or commenced against Surety on any Bond shall be paid, settled, compromised, resisted, defended, tried or appealed, and such determination shall be binding upon the Undersigned.

*See* **Ex. 2**, ¶ 7.

21. The GIA also states that Defendants granted UCS a continuing security interest in, among other property, all of Defendants':

> rights in the following: (a) All subcontracts let in connection therewith and surety bonds or guarantees issued on behalf of such subcontractors; (b) All machinery, plant equipment, or tools which shall be upon the site or sites of the work or elsewhere for the purpose of any Contract, including all material ordered for any Contract; (c) Any and all sums due or which may at any time become due under any Contract; (d) All rights arising out of all insurance policies, notes, accounts receivable and general intangibles. This Agreement constitutes a Security Agreement, and Surety may at any time, and without prior notice, file or record one or more financing statements or other documents pursuant to the Uniform Commercial Code or other applicable statute to record or perfect the security interests granted to Surety.

*See* **Ex. 2**, ¶ 6.

22. By virtue of the definitions and terms of the referenced GIA, the Defendants have been and remain, *inter alia*, obligated to cooperate with UCS's investigation into claims, and are jointly and severally liable to UCS as set forth herein. *See* **Ex. 2**, ¶ 4.

23. The Defendants also owe these obligations to UCS under common law.

**C. UCS's Losses and Demand for Indemnity and Collateral**

24. UCS received a claim on the Bonds as a result of Omimex's alleged violation of ECMC's Rules of Practice and Procedure related to oil and gas operations.

25. ECMC made a claim on the Bonds (the "Claim") and demanded the Bonds' combined penal sum: $205,000.00.

26. UCS investigated ECMC's Claim and, finding it valid, paid ECMC $205,000.00. This total does not include all recoverable attorneys' fees and costs, and continually accruing interest, which UCS continues to incur.

27. Upon payment of ECMC's Claim, UCS demanded that Defendants defend and indemnify UCS for its losses on the Bonds (the "Demand Letter"). A true and correct copy of UCS's August 1, 2025, Demand Letter to Defendants for collateral and indemnity is attached hereto as **Exhibit 3**.

28. UCS's August 1, 2025, Demand Letter explicitly notified the Defendants that the consequences of the Indemnitors' failure to respond was outlined in the GIA. *See* **Ex. 3**, p. 3.

29. Despite UCS's August 1, 2025, Demand Letter, Defendants failed and refused to defend, collateralize, or indemnity UCS. UCS has incurred and will continue to incur additional attorneys' fees and costs.

30. The Defendants' failure to respond to UCS's demands and not reimburse UCS is a material breach of Defendants' obligations under the GIA, and prevailing law.

31. Defendants must grant full and immediate access to their financial records and reimburse UCS of its losses-to-date of more than $205,000, losses which continue to increase due to Defendants' failure to honor their obligations under the GIA, which is nothing more than what is dictated by the GIA or otherwise equitable under the circumstances.

## FIRST CLAIM FOR RELIEF
## (Breach of Express Contract – GIA – Against All Defendants)

32. UCS hereby incorporates by reference all the allegations contained above as though fully set forth herein.

33. The Defendants entered into a valid and enforceable contract, the GIA, with UCS.

34. Sufficient consideration supports the GIA.

35. UCS substantially performed its obligations, if any, under the GIA.

36. The Defendants failed to meet their obligations under the GIA by failing to indemnify, collateralize, and reimburse UCS for liability and losses related to the Bonds, which constitutes a material breach.

37. Defendants' breach of the GIA has damaged UCS, and Defendants are liable to UCS for all losses and expenses incurred by UCS as a result of the issuance of the Bonds, including, but not limited to, Bond payments, attorneys' fees, expenses, and costs, all as provided for by the terms of the GIA.

## SECOND CLAIM FOR RELIEF
## (Unjust Enrichment – Against All Defendants)

38. UCS hereby incorporates by reference the allegations contained above as though fully set forth herein.

39. UCS conferred a benefit on Defendants by extending surety credit and/or executing the Bonds on behalf of the Indemnitors.

40. Defendants, through their control and/or ownership of Omimex, accepted and appreciated substantial economic benefit by profiting from Omimex's operations, which would not have been possible without the issuance of UCS's surety credit and/or the Bonds.

41. Defendants further accepted and appreciated that benefit by virtue of building equity in their real and personal property, including but not limited to real property located at 3508 Lexington Avenue, Dallas, Texas, 75205; 548 Wright Road, Clarksdale, Mississippi, 38614; 2727 Daniel Avenue, Dallas, Texas, 75205; and 2523 Meadow Brook Drive, Norman, Oklahoma, 73072, as well as the personal property stored at those locations.

42. Defendants agreed to defend and indemnify UCS in exchange for and pursuant to the terms of the GIA.

43. By failing and refusing to fulfill their duties to indemnify and exonerate UCS, Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which UCS is entitled pursuant to the GIA and/or common law.

44. Defendants have been unjustly enriched by at least $205,000 as a result of UCS fulfilling Omimex's contractual obligations through Bond payments.

45. It would be inequitable for Defendants to retain the benefit of UCS's surety credit and/or the Bonds without complying with their concomitant obligations under the GIA and/or common law to reimburse as promised to protect UCS from losses.

46. Under these circumstances and given the GIA relationships between UCS and Defendants, general considerations of right and justice dictate that UCS be granted the right to have Defendants' assets applied to their obligation to reimburse UCS.

## IV. PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, UCS requests judgment against Defendants as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by UCS as a result of Defendants' breach of the GIA, as well as specific performance of the same;

- For Defendants to indemnify and hold UCS harmless from and against any and all liabilities, losses and expenses of any kind or nature, including, but not limited to, interest, court

costs, expenses and attorneys' fees, imposed upon, sustained or incurred by UCS on account of the issuance of the Bonds;

- For such further relief as the Court deems just and proper.

**UCS DEMANDS TRIAL TO A JURY OF NOT LESS THAN SIX PERSONS ON ALL ISSUES HEREIN**.

Respectfully submitted this 3rd day of October, 2025.

The Hustead Law Firm
*A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

*s/ Jeffrey A. Hegewald*
Patrick Q. Hustead, Esq.
Jeffrey A. Hegewald, Esq.
Jason J. Patel, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
Ph. (303) 721-5000
pqh@thlf.com
jah@thlf.com
jjp@thlf.com
*Attorneys for Plaintiff United Casualty & Surety Insurance Company*

Address of the Plaintiff
303 Congress Street
Suite 502
Boston, MA 02210