**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 25-cv-03123-KAS

UNITED CASUALTY & SURETY INSURANCE COMPANY,

Plaintiff,

v.

RAVENWOOD ENERGY PARTNERS, LP,
DENNIS MCLAUGHLIN,
ANGELA MCLAUGHLIN,
CHRISTOPHER CHAMBERS, and
RHONDA CHAMBERS,

Defendants.

---

**VERIFIED MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT RAVENWOOD ENERGY PARTNERS, LP**

---

Plaintiff, United Casualty & Surety Insurance Company ("UCS"), through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, and pursuant to Fed. R. Civ. P. 55(b)(2), hereby submits its Motion for Entry of Default Judgment against Defendant Ravenwood Energy Partners, LP ("Ravenwood"), and as grounds therefore, states as follows:

**CERTIFICATION OF CONFERRAL**

UCS's undersigned counsel certifies, pursuant to U.S.D.C.L.R. 7.1(b)(1), he has not conferred with Ravenwood because of the nature of this Motion.

## I. BACKGROUND

1. On October 3, 2025, UCS filed its Complaint (the "Complaint") against Ravenwood in this matter [Doc. 1].

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Colorado. *Id.*

3. Ravenwood was personally served with a true and complete copy of the District Court Civil Summons, Complaint, and District Court Civil Case Cover Sheet in accordance with F.R.C.P. 4 on October 15, 2025. *See* **Exhibit 1 -** Affidavit of Service.

4. The Summons provided notice that Ravenwood was required to answer the Complaint within 21 days after such service. Ravenwood has not answered the Complaint, nor otherwise responded, pleaded, or defended against the Complaint and was given notice that failure to answer the Complaint may result in a default judgment entered against Ravenwood for the relief demanded in the Complaint without further notice. *See* **Exhibit 2** – Summons.

5. UCS moved for an Entry of a Clerk's Default against Ravenwood on November 12, 2025, [Doc.12] pursuant to Fed. R. Civ. P. 55(a). The Clerk's Entry of Default against Ravenwood was entered on February 10, 2026 [Doc. 26].

6. In UCS's Complaint, UCS alleges claims for breach of express contract and unjust enrichment. UCS's claims against Ravenwood are primarily based on the Ravenwood's failure to pay UCS amounts due and owing under an agreement of indemnity ("GIA"). *See* **Exhibit 3** – General Indemnity Agreement ("GIA").

7. More specifically, UCS and Ravenwood entered into the GIA on July 22, 2021. [Doc. 1, ¶12]. Thereafter, UCS, as surety, executed performance bonds nos. UCSX423X1393, UCSX423X1423, UCSX423X1392, and UCSX423X1455 ("Bonds") on behalf of Omimex Petroleum, Inc. ("Omimex"), as principal, in relation to oil and gas leases. The penal sum of the Bonds is $205,000.00 [Doc 1, ¶ 25]. *See* **Exhibit 4** – Bonds.

8. On or around August 1, 2024, UCS received a claim under the Bonds from Colorado Energy & Carbon Management Commission (the "Commission") in the amount of $205,000.00.

9. UCS conducted a detailed investigation into the Commission's claim and negotiated a reasonable settlement to resolve such claim. *See* **Exhibit 5** – Affidavit of Elizabeth Strausheim, ¶¶ 10-11; *see Balboa Ins. Co. v. U.S.,* 775 F.2d 1158, 1160 (Fed. Cir. 1985)); *see also Schmitt v. Ins. Co. of N. Am.,* 281 Cal. Rptr. 261, 269 (Cal. App. 3d. 1991) ("[I]t is not the duty of the surety to protect the principal as if the principal were the insured under an insurance policy. The surety's duty runs to the third-party obligee.")).

10. On or around July 31, 2025, UCS demanded that Ravenwood indemnify it from the Commission's claim, but UCS did not receive a response to its demand. [Doc. 1, ¶ 27].

11. UCS substantially performed its obligations under the GIA. Ravenwood failed to meet its obligations under the GIA, which constitutes a material breach of the GIA. *See* **Ex. 3**, ¶ 5; **Ex. 5**, ¶ 20.

12. As a consequence of having executed the Bonds, UCS has incurred unrecovered losses in the principal amount of at least $205,000.00. *See* **Ex. 5** – Affidavit of Elizabeth Strausheim.

13. More specifically, under the performance provisions of the Bond, UCS incurred losses of $205,000.00 relating directly to UCS's payments to the Commission. *See* **Ex. 5** at ¶ 11.

14. Further, in its claim analysis efforts to recover its payment to the Commission, UCS has incurred attorneys' fees and costs of $40,991.50 and $2,188.47, respectively. *See* **Ex. 5** at ¶¶ 14, 20. *See also* **Exhibit 6** – The Hustead Law Firm Invoices. These attorneys' fees and costs are

reasonable and necessary considering the legal area and time required. **Exhibit 7** – Affidavit of Patrick Q. Hustead, ¶¶ 15-19.

15. UCS requests that default judgment be entered in the principal amount of $205,000.00, plus post-judgment interest, attorneys' fees, and costs.

## II. ARGUMENT

Suretyship is a three-party relationship. In the typical arrangement, a contractor (the principal) obtains a bond or bonds from the surety, the purpose of which is to guarantee the principal's obligations to the owner and laborers/suppliers on a construction project (the obligee). Under the bond, the surety must perform the principal's obligations if the principal fails to do so, although the surety's liability cannot be any greater than that of the principal and is limited to the penal amount of the bond. In exchange for the surety's agreement to perform the principal's obligations, the principal and, often, other indemnitors, must reimburse the surety for any losses or expenses the surety incurs.

Suretyship is a credit arrangement, as the principal uses the surety's promise to perform the principal's obligations to be able to submit bids and work on projects. The bond is a conduit, as without the surety's backing, the principal would not be awarded the work. Thus, the facts that the principal is primarily liable and the surety's right to be reimbursed are the cornerstones of the surety relationship. *See U.S. v. Gonzales*, 541 F. Supp. 783, 785 (D. Kan. 1982). Without these tenets, the surety becomes nothing more than an insurer, a separate and distinct legal concept.

### A. Legal Standard for Default Judgment.

Under Fed. R. Civ. P. 55(b)(1):

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that

> amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Once a default is entered against Ravenwood, the well-pleaded facts of the complaint are deemed to be true. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002). On October 15, 2025, UCS filed the Complaint against Ravenwood for its breaches of the GIA.

Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Ravenwood's Answers or other responses to the Complaint were due twenty-one (21) days after service of process upon Ravenwood. UCS served Ravenwood on October 15, 2025. Ravenwood's Answer or other responsive pleading was due on November 12, 2025.

To date, Ravenwood has failed to file an Answer or otherwise respond to the Complaint. As a result of Ravenwood's failure to file a responsive pleading within the required time, UCS moved for an Entry of a Clerk's Default against Ravenwood on December 1, 2025. [Doc. 16]. The Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(a) was entered on February 10, 2026. [Doc. 26].

As discussed above and as set forth in the Complaint, UCS, as surety, issued the Bonds on behalf of Omimex, as principal. In consideration for the Bonds issued by UCS, Ravenwood, among other things, executed the GIA in favor of UCS. Under the GIA, Ravenwood agreed to:

> indemnify and hold Surety harmless from and against any and all claims, demands, liabilities, losses, costs, damages, and Expenses that Surety may pay or incur by reason of or as a result of Surety's execution of any Bond, including but not limited to all such loss, cost and Expenses relating to: (a) any claim, demand, suit, action, proceeding or judgment arising under, involving or relating to any Bond, whether or not Surety shall make or shall have made any payment in respect thereof. or (b) any action or proceeding to enforce any of the terms of this Agreement or to obtain recovery

> from any person of any loss, cost or Expenses incurred by Surety, or any unpaid premiums in respect of any Bond. *See* **Ex. 3**, ¶ 3.

Ravenwood also promised to "deposit with Surety cash in the amount Surety determines, in its sole discretion," and "fully protect Surety from all potential loss, cost or Expenses in respect of any claim, demand, notice, suit or other potential or anticipated liability under any Bond." *See* **Ex. 3**, ¶ 4. Further, Ravenwood is jointly and severally liable to UCS for all of its losses on account of having executed the Bonds. *See* **Ex. 3**, ¶¶ 1, 3.

Upon receipt of the Commission's claim, and as required by the Bonds and prevailing law, UCS began investigating the claim and demanded indemnification from Ravenwood. Despite demands, Ravenwood never posted collateral with UCS. Further, after resolving the Commission's claims, UCS demanded that Ravenwood reimburse it for the $205,000.00 paid to settle the Commission's claims.

**B. Law Governing Surety Indemnity Agreements.**

A contract is to be interpreted in its entirety to harmonize and to give effect to all provisions, if possible. *Phillips Petroleum Co. v. McCormick*, 211 F.2d 361, 364 (10th Cir. 1954). An indemnity agreement is subject to the same rules of construction that govern contracts generally. *Employers' Liab. Assur. Corp. v. Tebbs,* 137 F. Supp. 869, 871 (D. Wyo. 1956). Hence, it should be enforced according to the plain and generally accepted meaning of its language and interpreted in its entirety to give effect to all of its provisions so that none are rendered meaningless. *Casper Inn, LLC v. Superior Builders, Inc.,* No. 16-CV-11-R, 2017 WL 5172401, at *5 (D. Wyo. July 17, 2017).

## C. Breach of Express Contract against Ravenwood

UCS moves for entry of default judgment on its first cause of action, which is a breach of the GIA against Ravenwood. A party attempting to recover for breach of contract must prove: 1) the existence of a contract, 2) plaintiff's substantial performance of the contract; 3) defendant's failure to perform the contract; and 4) damages to plaintiff. *See, e.g, Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).

As discussed above, UCS issued the Bonds on behalf of Ravenwood. Ravenwood signed the GIA by which Ravenwood agreed, among other things, to defend and indemnify UCS from any losses and reimburse UCS for its actual and anticipated losses arising out of bonds issued on behalf of Omimex.

UCS received claims on the Bonds from the Commission relating to Ravenwood's failure to compensate Omimex for alleged violation of the Commission's Rules of Practice and Procedure related to oil and gas operations. UCS demanded indemnity from Ravenwood. UCS, however, never received indemnity from Ravenwood in breach of its obligations under the Bonds.

In accordance with UCS's obligations under the Bonds and the GIA, UCS has paid $205,000.00 to satisfy bond claims on behalf of Ravenwood. **Ex. 5**, ¶ 11. UCS has also incurred attorneys' fees and costs in the amount of at least $40,991.50 and $2,188.47, respectively. **Ex. 5**, ¶ 14. Thus, UCS expended over $248,179.97 in payments to claimants, attorneys' fees, costs, and expenses. *See* **Ex. 5**, ¶ 16. UCS continues to incur losses in its pursuit of indemnity from all Defendants.

UCS has verified that these payments, fees, costs, and expenses were all reasonable and necessary under the circumstances. *See* **Ex. 5**, ¶ 19. UCS substantially performed its obligations

under the GIA. *See* **Ex. 5**, ¶ 20. Ravenwood failed to meet its obligations under the GIA, which constitutes a material breach of the GIA. *See* **Ex. 3**, ¶ 5. The GIA also states:

> A statement of Surety's losses, cost and Expenses sworn to by an officer of Surety, or the other evidence of disbursement by Surety maintained in the ordinary course of business as Surety's paper or electronic business records and/or systems, shall be prima facie evidence of the fact and extent of the liability of the Undersigned. *See* **Ex. 3**, ¶ 3.

Courts routinely enforce "prima facie" evidence clauses like the one found in the GIA, which shifts the burden of proof to Ravenwood. *See, e.g.*, *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125 (3rd Cir. 1997); *Cont'l Cas. Co. v. Am. Sec. Corp.*, 443 F.2d 649, 652-53 (D. C. Cir. 1970); *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968); *Int'l Fid. Ins. Co. v. United Constr., Inc.*, 1992 WL 111368 (E. D. Pa. 1992); *Buckeye Union Ins. Co. v. Boggs*, 109 F.R.D. 420, 423-24 (S.D. W. Va. 1986); *Transamerica Premier Ins. Co. v. Nelson*, 878 P.2d 314, 318 (Nev. 1994); *Hawaiian Ins. & Guar. Co. v. Higashi*, 675 P.2d 767, 769 (Haw. 1984); *U.S. Fid. & Guar. Co. v. Napier Elec. & Constr. Co.*, 571 S.W. 2d 644, 645 (Ky. Ct. App. 1978). Thus, UCS has met its burden of demonstrating that these damages are prima facie evidence of the fact and amount of Ravenwood's liability to UCS.

In sum, UCS has established that Ravenwood breached the GIA because: 1) it executed the contract, 2) UCS performed any obligations under the GIA by issuing the Bonds and paying any valid claims, 3) Ravenwood failed to comply with its obligations by failing to reimburse UCS for its losses, 4) and UCS has incurred damages caused by Ravenwood's breach. Specifically, UCS is entitled to judgment against Ravenwood: for all losses and expenses incurred by UCS as a result of the issuance of the Bonds and pursuing reimbursement from Ravenwood, including, but not

limited to, Bond payments, attorneys' fees, consultant fees, and costs, plus interest, all as provided by the terms of the GIA and prevailing law.

Accordingly, UCS requests this Court award UCS a final, appealable, and enforceable judgment for UCS's damages, fees, costs and post-judgment interest in the amount of $248,179.97. UCS will dismiss all other claims against Ravenwood with prejudice once judgment is entered.

## III. CONCLUSION

This is a straight-forward surety indemnity case where Ravenwood failed to answer the suit, failed to comply with its obligations under the GIA and thus, damaged UCS. For the reasons stated above, each of the elements of a breach of express contract have been met here as to Ravenwood, and UCS has met its burden in showing entry of default judgment is proper and appropriate.

WHEREFORE, in reliance on the argument and supporting facts set forth above, Plaintiff, United Casualty & Surety Insurance Company, respectfully requests that a final, appealable, and enforceable default judgment be entered against Defendant Ravenwood Energy Partners, LP, for the amount of $248,179.97, with post-judgment interest at the lawful rate, and for such other relief as the Court deems just and appropriate.

[*Signatura Sequitur*]

Respectfully submitted this 30th day of April, 2026.

The Hustead Law Firm
*A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

*/s/ Jeffrey A. Hegewald*

Patrick Q. Hustead, Esq.
Jeffrey A. Hegewald, Esq.
Jason J. Patel, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
Ph. (303) 721-5000
pqh@thlf.com
jah@thlf.com
jjp@thlf.com
*Attorneys for United Casualty & Surety Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2026, a true and correct copy of the foregoing **VERIFIED MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT RAVENWOOD ENERGY PARTNERS, LP** was electronically filed and served via USDC e-filing and/or e-mail, and addressed to the following:

Christopher Chambers
2523 Meadow Brook Drive
Norman, OK 73072
kchambers@ravenwoodlabs.com
*Pro Se*

Rhonda Chambers
2523 Meadow Brook Drive
Norman, OK 73072
kchambers@ravenwoodlabs.com
*Pro Se*

Angela McLaughlin
549 Wright Road
Clarksdale, MS 38614

*Pro Se*

Dennis McLaughlin
2701 East Rock Creek Road
Norman, OK 73071
dmac@ravenwoodlabs.com
*Pro Se*

Ravenwood Energy Partners
c/o Registered Agent Quick Law Group
1035 Pearl Street, Suite 331
Boulder, CO 80302

*Unrepresented*

*Original Signature is on File at*
*The Hustead Law Firm, A Professional Corporation*

*s/ Jeffrey A. Hegewald*
Jeffrey A. Hegewald, Esq.